# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

                Plaintiff,

-against-

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING

                Defendants.

INDEX NO.

IAS PART

JUSTICE

COMPLAINT

Plaintiff LAK3, LLC ("Plaintiff"), by and through its counsel, GordonLaw LLP, as and for its Complaint in this action, hereby alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff owns the real property known as and located at 41 Averill Drive, Mahopac, New York (the "Property").

2.      In May 2016, Plaintiff engaged Defendants Sean Dunn ("Sean") and Gerald Dunn ("Gerald"), acting for themselves but using what Plaintiff now knows is a pseudonym, "Well Dunn Maintenance & Contracting" ("Well Dunn") to demolish an existing single-family residence at the Property and to build a new single-family residence there (the Project").

3.      Plaintiff engaged Defendants based on the many representations that Sean and Gerald made as to their alleged competence, skill, experience, licensure, and organizational structure – all of which were important to Plaintiff and all of which turned out to be false.

4.      Upon information and belief, based upon public records of the State of New York and the Counties of Putnam and Westchester, Well Dunn is not a corporation, limited liability company, partnership, or any other business association, it is not registered as any such entity with the Secretary of State of the State of New York, it is not licensed or registered to do business in the State of New York or the Counties of Putnam or Westchester, and it does not maintain workers' compensation insurance.

5.      Upon information and belief, Well Dunn is a misleading pseudonym that Sean Dunn and Gerald Dunn have been using – and used to secure the position of general contractor for the Project – to create the false impression that they operate a residential home improvement construction company with the resources and organizational structure that a reasonable person would expect from a company so advertised.

6.      Upon information, neither Sean Dunn nor Gerald Dunn had or have anything close to the level of competence, skill, or experience they told Plaintiff's representatives they had when they persuaded Plaintiff to retain Defendants as the general contractor on the Project.

7.      As a direct and proximate result of (a) the gross incompetence of Defendants Sean, Gerald, and Well Dunn (together, the "Defendants"), and (b) the knowing and intentional fraud, deception, defalcation and larceny that Defendants perpetrated on Plaintiff, as set forth more fully below, Plaintiff has been damaged in amount to be proved at trial but believed to be at least $1 million, and the construction of the Project has been delayed by almost one year.

8.      As a further direct and proximate result of the gross incompetence of Defendants, and the knowing and intentional fraud, deception, defalcation and larceny that Defendants perpetrated on Plaintiff, (a) trust fund monies that Plaintiff had earmarked for the Project by Plaintiff and entrusted to Defendants were, upon information and belief, knowingly and

2

intentionally diverted by Defendants for their own personal, non-Project related purposes, (b) false financial statements, upon which Plaintiff relied to its detriment, were knowingly and intentionally created by Defendants so as to conceal from Plaintiff Defendants' defalcations, embezzlement, and larcenies, and (c) subcontractors and suppliers, who, upon information and belief, were entitled to trust fund dollars that Plaintiff paid to and put into the care and custody of Defendants, were not paid by Defendants, even though Defendants falsely represented to Plaintiff that all subcontractors and suppliers had been paid in full.

9. Accordingly, Plaintiff brings this action because Defendants, in whom Plaintiff placed its trust and confidence and in whom Plaintiff entrusted Project monies, knowingly, intentionally, recklessly, wrongfully, and in bad faith embezzled from Plaintiff, deprived Plaintiff of property that Defendants knew belonged to Plaintiff, defrauded Plaintiff, and failed and refused to complete the Project properly and timely.

10. More specifically, Plaintiff brings this action because Defendant, acting at all relevant times as Plaintiff's fiduciaries, knowingly, intentionally, wrongfully, and in bad faith:

(a) failed to complete the Project properly and on time,

(b) deviated from the Project design,

(c) failed to follow proper construction means and methods,

(d) violated manufacturer installation guidelines,

(e) violated applicable construction-related laws and building codes,

(f) refused to enter into a written agreement with Plaintiff despite Plaintiff's repeated demands for a written agreement,

(g) failed to maintain licenses and registrations required by governmental regulation,

3

(h)     falsely represented to Plaintiff and the New York State Compensation Board that Well Dunn is a corporation, even though Defendants knew at the time of such submission that Well Dunn was not a corporation;

(i)     falsely represented to Plaintiff and state and local governmental agencies that Defendants had maintained all required licenses and registrations,

(j)     falsely represented to Plaintiff that Defendants maintained required Workers' Compensation Insurance,

(k)     failed to pay subcontractors and suppliers, causing, among other things, at least one Notice of Mechanic's Lien to be filed against the Property by a subcontractor,

(l)     diverted Lien Law trust fund monies in violation of the New York Lien Law, and

(m)     submitted to Plaintiff a so-called "Partial Release and Waiver of Lien Right" falsely stating, among other things, that "all persons or entities who have furnished labor or materials to [Defendants] in connection with the [Project] performed through the date hereof have been paid all amounts to which they have become entitled, excepting agree retainage not yet payable and due."

11.     As a direct and proximate result of the misconduct set forth above in Paragraph 4, the single-family residence that is the subject of the Project has not been constructed properly, the Project has been substantially and unreasonably delayed, Lien Law trust fund monies have been diverted from the Project and from Project subcontractors and suppliers, Project-related construction work must be re-done, and a swath of laws and regulations enacted and promulgated by New York State, Putnam County, Westchester County, and the Town of Carmel have been violated, to the detriment of Plaintiff and the public.

4

12.     Plaintiff seeks fair compensation for the damage Defendants have caused as well as the imposition of punitive damages, which will serve to dissuade Defendants from perpetrating such misdeeds in the future

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter and the parties because the events that give rise to this action occurred within the State of New York, and, upon information and belief, all parties are residents of the State of New York.

14.     Venue is proper in this Court because Plaintiff is a resident of Westchester County, New York, and, upon information and belief, Defendants are all residents of Westchester County, New York.

## THE PARTIES

15.     Plaintiff is a limited liability company that has its principal place of business in Yorktown Heights, New York, which is located in Westchester County, New York.

16.     Defendant Sean Dunn is an individual who, upon information and belief, resides in Yorktown Heights, New York, which is located in Westchester County, New York.

17.     Defendant Gerald Dunn is an individual who, upon information and belief, resides in Yorktown Heights, New York, which is located in Westchester County, New York.

18.     Upon information and belief, Defendant Well Dunn Maintenance & Contracting is a pseudonym or trade name under which Sean Dunn and/or Gerald Dunn, together and/or separately, do business.

19.     Alternatively, upon information and belief, Well Dunn is an unlicensed, unregulated, improperly formed, and improperly functioning business association with an office in Yorktown Heights, New York, which is located in Westchester County, New York.

5

## THE FACTUAL BACKGROUND

**A.      The Background Facts regarding the Project**

20.     Plaintiff purchased the Property in or about August 2015.

21.     On or about January 13, 2016, Ned Kleinschmidt and Lesley Kleinschmidt (together, the "Kleinschmidts"), on behalf of Plaintiff, met with Defendants at the offices of Michael A. Piccirillo in Yorktown Heights, Westchester County, to discuss the Project.[1]

22.     Before meeting with Sean and Gerald, the Kleinschmidts read the contents of the Well Dunn website.

23.     The Kleinschmidts saw on the Well Dunn web site that, among other things, Well Dunn touted itself as experienced home improvement contract, that it was located in Yorktown Heights, where the Kleinschmidts resided, that it was experienced in all types of home improvement projects and had many clients that would give it positive reviews, and that it was licensed in Westchester County, Putnam County, the City of Yonkers and "all of Connecticut."

24.     The Kleinschmidts relied on what they had read on the Well Dunn web site and had no reason to doubt any of the information set forth on that web site.

25.     Indeed, upon information and belief, Defendants knowingly and intentionally submitted a false Putnam County contractor's license number when they applied for a building permit for the Project.

26.     When the Kleinschmidts met with Defendants, Defendants repeated and expanded upon what the Kleinschmidts had read on the Well Dunn web site; that is, Defendants touted

---

[1] At all relevant times, Ned Kleinschmidt has been the Managing Member of Plaintiff, and Lesley Kleinschmidt has been an agent of Plaintiff, and the Kleinschmidt have been authorized to act on Plaintiff's behalf.

6

themselves as experienced home improvement contractors who were licensed in Putnam County and who knew how to build the house that Plaintiff wanted to build.

27.     The Kleinschmidts had no reason to doubt, and did not doubt, anything that Defendants said at the January 13, 2016 meeting; in fact, the Kleinschmidts relied upon what Defendants had said at the January 13, 2016 meeting and concluded, based upon what Defendants had said, that Defendants were qualified in all respects to serve as Project General Contractor.

28.     Based upon the representations that Defendants made to the Kleinschmidts and therefore Plaintiff at the January 13, 2016 meeting, the statements that the Kleinschmidts saw on the Well Dunn web site, the Kleinschmidts agreed to accept a bid from Defendants for the Project.

29.     After a meeting among the Kleinschmidts and Defendants that took place on March 9, 2016, Defendants submitted a bid to Plaintiff for the Project in the amount of $1,150,000 plus approved changed orders.

30.     The bid that Defendants submitted on March 16, 2016 was based on construction plans and specifications that were prepared for the Project by Michael A. Picicirillo, AIA (the "Plans and Specifications"), which were delivered to Defendants.

31.     Defendants reviewed the Plans and Specifications before submitting their bid on the Project and agreed to construct the Project according to the Plans and Specifications.

32.     On or about March 18, 2016, Plaintiff awarded the role of Project General Contractor to Defendants.

7

33.     On or about March 18, 2016, Defendants accepted the role of Project General Contractor, knowing that in so doing it would be entering into a position of trust and confidence with Plaintiff.

34.     Despite repeated demands from Plaintiff throughout the Project for a written agreement to document the terms of the contract between Plaintiff and Defendants, Defendants knowingly, intentionally, and wrongfully refused to prepare such a written agreement for the Project.

35.     The laws of the State of New York and Putnam County require that for construction projects such as the Project, the general contractor must prepare a written contract between the general contractor and owner.

36.     The laws of the State of New York and Putnam County require that for construction projects such as the Project, a general contractor must be registered and licensed to do business as a general contractor.

37.     Upon information and belief, Defendants violated the laws described in Paragraphs 35 and 36.

38.     In or about June 2016. Defendants requested an initial payment of $165,000.00 for what Defendants represented would be applied to the cost of construction work, labor, services, and materials.

39.     On or about June 27, 2016, Plaintiff, at the request of Defendants, as aforesaid, made an initial payment of $ 165,000.00 for Project construction work, labor, services and materials.

40.     On or about June 26, 2016, the Project began.

8

41.     Between June 27, 2016 and March 11, 2017, Plaintiff paid Defendants, in total, the sum of $840,828.22 for what Defendants told Plaintiff was being applied to the cost of Project construction work, labor, services and materials.

42.     Upon information and belief, Defendants engaged a number of subcontractors and purchased materials from a number of suppliers for the Project.

43.     Upon information and belief, Defendants represented to the subcontractors and suppliers on the Project that they would be paid for the work, labor, services and materials they furnished to and for the benefit of the Project from funds specifically provided for the Project by Plaintiff, the owner of the Project.

44.     The monies that Plaintiff paid to Defendants for the Project were trust funds within the meaning of the Lien Law of the State of New York.

45.     Upon information and belief, Defendants knew at all relevant times that the monies that Plaintiff paid to Defendants for the Project were trust funds within the meaning of the Lien Law of the State of New York.

46.     During the course of construction, Defendants made repeated representations to Plaintiffs, orally and in writing, as to the value of work, labor, services, and materials that had been furnished to and for the benefit of the Project.

47.     Upon information and belief, all of Defendants' representations about the value of Project-related construction work, labor, services, and materials that Defendants supposedly furnished to and for the benefit of the Project were false; for example, on or about May 4, 2017, Defendants represented to Plaintiff that (a) Defendants had furnished $840,828.00 of work, labor, services, and materials in, at, and for the benefit of the Project and (b) all subcontractors and suppliers who were responsible for furnishing such work, labor, services and materials had

9

been paid in full, even though Plaintiff has determined that not more than $370,000 in work,

labor, services, and materials have been furnished in, at, and for the benefit of the Project and

that not all subcontractors and suppliers have been paid in full.

48.     Upon information and belief, Defendants knew at the time they made their

representations about the value of the Project-related construction work, labor, services, and

materials that Defendants supposedly furnished to and for the benefit that those representations

were false.

49.     Upon information and belief, Defendants intended for Plaintiff to rely upon the

knowingly false representations that Defendants actively and deceptively made to Plaintiff about

the value of the Project-related construction work, labor, services, and materials and the payment

of subcontractors and suppliers so that Plaintiff would continue to provide funding to and for the

benefit of the Project.

50.     Until approximately mid-March 2017, Plaintiff relied in good faith upon the

representations that Defendants made about the value of the Project-related construction work,

labor, services, and materials that Defendants supposedly furnished to and for the benefit of the

Project.

51.     Upon information and belief, Defendants failed to pay at least two subcontractors,

M&S Steel and Hauptman Enterprises, both of which have claimed to have furnished work,

labor, services and materials to and for the benefit of the Project even though (a) Defendants

requested that Plaintiff pay such amounts, (b) Defendants told Plaintiff that these two

subcontractors were entitled to the payments requested, and (c) Plaintiff did pay such amounts at

Defendants' request to Defendants.

10

52.     On or about July 17, 2017, M&S filed a Notice of Mechanic's Lien against the Property alleging that M&S furnished work, labor, services, and materials in the amount of $43,788 but was not paid any portion of that, even though Defendants represented in writing to Plaintiff that M&S, among other subcontractors and suppliers, had been paid in full.

53.     Plaintiff has discovered that many aspects of the Project-related construction work, labor, services and materials that Defendants allegedly furnished to and for the benefit of the Project either were not furnished or were furnished improperly or not in compliance with the Plans and Specifications.

54.     For example, Plaintiff has learned that all of the Sierra Pacific windows that Plaintiff purchased for the Project and that Defendants, directly or through a subcontractor, were tasked to install (and were paid to install) were installed by Defendants (directly or through a subcontractor) incorrectly, in violation of the manufacturer's installation instructions, and out of compliance with the Plans and Specifications, and will need to be removed and re-installed, at great financial and temporal expense.

55.     Also by way of example, Defendants failed to install the ZIP sheathing system that serves to weatherize the house properly, causing that system to remain exposed to the elements longer than appropriate, in violation of the manufacturer's installation instructions and out of compliance with the Plans and Specifications.

56.     Despite Plaintiffs' repeated demands to Defendants to cure the defective construction conditions that Defendants caused, Defendants refused to do so.

57.     In light of the defective construction conditions caused by Defendants, and in light of Defendants' refusal to cure those defective conditions, Plaintiff terminated Defendants as Project General Contractor for cause on or about June 19, 2017.

11

58.    Defendants did not dispute that there were ample grounds for Plaintiff to terminate Defendants for cause.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

59.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-58 above as if fully set forth herein.

60.    A contract (the "Oral Contract") was formed between Plaintiff and Defendants when Defendants agreed to serve as Project General Contractor pursuant to the Plans and Specifications and Plaintiff agreed to pay Defendants $1,150,000 plus the amount of approved change orders to serve in that capacity.

61.    Plaintiff upheld all of its obligations under the Oral Contract by making all required payments, making the Project site available to Defendants, cooperating with Defendants, and taking all steps that owners of residential construction projects ordinarily and reasonably take on projects such as this.

62.    Under the Oral Contract, Defendants had a duty to, among other things, (a) complete the Project properly and on time, (b) follow and adhere to the Plans and Specs, proper construction means and methods, manufacturer installation guidelines, and applicable laws and building codes, (c) and pay subcontractors and suppliers.

63.    Defendants failed to meet their obligations under the Oral Contract by failing to complete the Project properly and on time, deviating materially from the Plans and Specs, not following proper construction means and methods, violating manufacturer installation guidelines, violating applicable laws and building codes by, among other things, failing and refusing to enter into a written agreement with Plaintiff and not maintaining appropriate licenses and registrations, failing to pay subcontractors and suppliers, causing at least one Notice of

12

Mechanic's Lien to be filed against the Property, and diverting Lien Law trust fund monies in violation of the New York Lien Law.

64.     As a direct and proximate result of Defendants' breach of the Oral Contract, as aforesaid, the single-family residence that is the subject of the Project has not been constructed properly, the Project has been substantially and unreasonably delayed, Lien Law trust fund monies have been diverted from the Project and from Project subcontractors and suppliers, and Project-related construction work must be re-done.

65.     As a direct and proximate result of Defendants' breach of the Oral Contract, as aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

66.     As a direct and proximate result of Defendants breach of fiduciary duty, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

67.     Defendants are estopped from raising the Statute of Frauds with respect to the Oral Contract because despite Plaintiffs' repeated demands for a written contract, Defendants, in violation of the law, knowingly, intentionally, wrongfully, and in an effort to further their scheme to perpetrate defalcations, embezzlements, and larcenies against Plaintiff, refused to enter into such a written agreement.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(For *quantum meruit* and unjust enrichment)**

68.     Plaintiff repeats and realleges the allegations set forth above in Paragraphs 1-67 as if fully set forth herein.

69.     To the extent the Oral Contract is found to be invalid, violative of the Statute of Frauds, or otherwise unenforceable, Defendants will have been unjustly enriched by its

13

misconduct, as aforesaid, and Plaintiff will be entitled to pursue and recover all amounts sought in the First Cause of Action in quasi-contract based on the principles of *quantum meruit* and unjust enrichment.

70.     By reason of the foregoing, Defendants have been unjustly enriched at the expense of Plaintiff.

71.     By reason of the foregoing, Defendants unjustly received valuable property and were unjustly enriched at the expense of Plaintiff, as aforesaid.

72.     The circumstances are such that equity and good conscience require Defendants to make restitution or otherwise compensate Plaintiff for the unjust enrichment it has enjoyed at the expense of Plaintiff, in an amount to be proven at trial but believed to be in excess of $1,000.000.00.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (For fraud)

73.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-72 above as if fully set forth herein.

74.     Defendants made repeated representations about their competence, skill, experience, licensure, and organizational structure to the Kleinschmidts, who at all relevant times acted for and on behalf of Plaintiff, at a number of meetings that were attended by, among others, Sean, Gerald, and the Kleinschmidts, as more fully and specifically described above.

75.     The representations that Defendants to Plaintiff made were material to Plaintiffs' decision to engage Defendants as Project General Contractor and to make payments to Defendants during the Project.

76.     Upon information and belief, the material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure were false.

14

77.    Upon information and belief, Defendants knew that material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure were false.

78.    Upon information and belief, Defendants intended for Plaintiff to rely upon the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure.

79.    Plaintiff relied to its detriment upon the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure were false.

80.    As a direct and proximate result of the knowingly false, material representations that Defendants made to Plaintiff, Plaintiff retained Defendants to serve as Project General Contractor.

81.    But for the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure, Plaintiff would not have offered the job of Project General Contractor to Defendants and would not have retained Defendants as Project General Contractor.

82.    As a direct and proximate result of the knowingly false, material representations that Defendants made to Plaintiff, upon which Plaintiff relied to its detriment, as aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (For breach of fiduciary duty)

83.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-82 above as if fully set forth herein.

15

84.    As Project General Contractor, Defendants owed a fiduciary duty to Plaintiff.

85.    When Defendants agreed to become, and became, Project General Contractor, they entered into a relationship of trust and confidence with Plaintiff.

86.    Based upon the knowing, intentional, and wrongful misconduct, as aforesaid, Defendants knowingly and intentionally and with a culpable state of mind breached their fiduciary duty to Plaintiff.

87.    Based upon the knowing, intentional, and wrongful misconduct, as aforesaid, Defendants knowingly and intentionally and with a culpable state of mind violated the relationship of trust and confidence with Plaintiff.

88.    As a direct and proximate result of Defendants' breach of fiduciary duty, as aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Lien Law Trust Fund Diversion)

89.    Plaintiff repeats and realleges Paragraphs 1-88 above as if fully set forth herein.

90.    During the Project, Plaintiff paid to Defendants a total of at least $840,828.22 for what Plaintiff reasonably believed was the cost of the work, labor, services, and materials that had been furnished to and for the benefit of the Project.

91.    Plaintiff made the payments described in Paragraph 90 above based upon Defendants' demand for same.

92.    Plaintiff made the payments described in Paragraph 90 above based upon Defendants' repeated representations that all payments that were due to subcontractors and suppliers on the Project had been made and no subcontractors or suppliers were due any money for work, labor, services or materials they had furnished to and for the benefit of the Project.

16

93.    Plaintiff reasonably relied upon the representations described in Paragraph 92 above.

94.    The representations by Defendants described in Paragraph 92 above were false.

95.    Upon information and belief, Defendants knew that the representations they had made, as described in Paragraph 92 above, were false, and Defendants intended to deceive Plaintiff by making such misrepresentations, all of which were material.

96.    The monies that Plaintiff paid to Defendants for the Project were and are trust funds within the meaning of the New York Lien Law.

97.    Upon information and belief, Defendants diverted a substantial portion of the aforesaid trust funds, the exact amount of which is unknown but which will be proved at trial, for personal, non-Project related purposes, in violation of the New York Lien Law.

98.    As a direct and proximate result of Defendants' diversion of Lien Law Trust funds, a Notice of Mechanic's Lien has been filed against the Property.

99.    As a direct and proximate result of Defendants' division of Lien Law Trust funds,

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.    On the First Cause of Action, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

B.    On the Second Cause of Action, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

C.    On the Third Cause of Action, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

17

D.      On the Fourth Cause of Action, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

E.      On the Fifth Cause of Action, judgment requiring Defendants to disgorge all diverted Lien Law Trust Funds, the amount of which will be proven at trial.

F.      For such other and further relief as is just and proper, including without limitation awarding Plaintiff its reasonable attorneys' fees and court costs.

Dated: Katonah, New York
       August 4, 2017

                                        GORDONLAW LLP

                                        By:    Michael R. Gordon

                                        *Attorneys for Plaintiff LAK3, LLC*

                                        51 Bedford Road, Suite 10
                                        Katonah, New York 10536
                                        914.232.9500
                                        mgordon@gordonlawllp.com

18